## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-20040-CR-MARTINEZ

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ERIC MANUEL SUERO TERRERO,

        Defendant.

_____/

## DEFENDANT SUERO'S SENTENCING MEMORANDUM

The Defendant, Eric Manuel Suero Terrero, by and through his undersigned counsel, files this his Sentencing Memorandum and states as follows:

### INTRODUCTION

The Defendant is to be sentenced after he pled guilty to a single count of conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 70506(b). The Defendant wishes to object to the guideline calculations in the Presentence Investigation Report ("PSI"). The Defendant will also ask the Court to consider the 18 U.S.C. § 3553 factors and to sentence him below the recommended sentencing range.

### OBJECTIONS TO THE GUIDELINE CALCULATIONS

The Defendant objects to paragraph 14 inasmuch as it fails to assign him a minor role pursuant to U.S.S.G. §3B1.2(b) with the corresponding two-level reduction for such minor role. Application Note 3(C) under U.S.S.G. §3B1.2(b), provides as follows: (C) Fact-Based Determination. —The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity. Examining the instant case in the framework suggested by Application Note 3(C) mandates a minor role adjustment in the instant case:

(i) In the instant case there is no evidence whatsoever that the Defendant understood the scope and structure of the criminal activity;

(ii) In the instant there is no evidence whatsoever that the Defendant participated in planning or organizing the criminal activity;

(iii) In the instant case there is no evidence whatsoever that the Defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) In the instant case the Defendant was merely recruited to be a deckhand aboard a drug smuggling vessel. There is no evidence whatsoever that the Defendant had any discretion in the manner in which he performed his conduct as a deckhand; and

(v) In the instant case the Defendant was to "be paid for his work" the amount of 50,000.00 Dominican pesos (roughly the equivalent of $946 U.S.), however he received nothing as compensation for his efforts.

Further, as the guidelines provide, *"a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline."* (Emphasis added.) Application Note 3(A) also provides: A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that

offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline."

The Defendant in the instant case is "merely a deckhand involved in one shipment of cocaine for a larger conspiracy and therefore less culpable than his co-conspirators." *United States v. Colorado,* 716 Fed. Appx. 922, 923 (11th Cir. 2017

The Court may be tempted to consider the considerable quantity of drugs aboard the vessel as being determinative of the issue of role in the offense. In this regard, the Eleventh Circuit has spoken. Specifically, in the case of *United States v. Cruickshank,* 837 F.3d 1182, 1192 (11th Cir. 2016), cert. denied, 137 S. Ct. 1435 (2017), the Court remanded and instructed the district court to "perform an inquiry based on the totality of circumstances, taking into account the variety of factors laid out in [United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc)] and the guidelines commentary. Later, in *United States v. Colorado,* 716 Fed. Appx. at 924, the Court stated, "For these reasons, as in *Cruikshank*, we think the wisest course of action is to vacate Colorado's sentence and remand for resentencing. On remand, the district court should perform an inquiry based on the totality of the circumstances, taking into account the factors set forth in the commentary to U.S.S.G. § 3B1.2." Further, the fact that co-conspirators in a drug trafficking enterprise may be essential to the execution of the offense—cannot, under the

guidelines, be determinative of whether to give a minor role reduction. See U.S.S.G. § 3B1.2, cmt.n.3(C) ("The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative."). *United States v. Colorado*, 716 Fed. Appx. at 924. Although Application Note 3(A) under U.S.S.G. §3B1.2(b), provides, "[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity," the Court must perform this inquiry based on the totality of the circumstances.

In this case, aboard the subject vessel were the following individuals: Angelo Martinez, who was the master of the vessel; Justo Matos the load guard of the vessel; and the Defendant, a deckhand. The Defendant was the least culpable of all the co-conspirators, known and unknown. U.S.S.G. §3B1.2 makes a cross-reference to the definition of "participant" as set forth in Application Note 1 under U.S.S.G. §3B1.1. Specifically, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." It is submitted that the Court in applying the totality of the circumstances analysis should not ignore the fact that there are other individuals/participants involved in the planning and organizing the criminal activity, who clearly control the much higher-level organization behind this on-board lowly criminal conspiracy. In other words, the analysis should not be limited to identifiable or charged co-conspirators inasmuch

as those other presently unnamed individuals that are clearly organizers, leaders, managers, or supervisors, are criminally responsible for the commission of the offense as well.

The Defendant also objects to paragraph 19 of the PSI insofar as it fails to reduce his base offense level of 36 by three levels pursuant to U.S.S.G. §2D1.1(a)(5)(A) and(B)(ii), since he should receive the aforementioned mitigating role adjustment noted above. Therefore, the base offense level should read 33.

The Defendant further objects to the failure of U.S. Probation to find that the Defendant qualifies for the "Safety Valve" pursuant to § 5C1.2 (the "Safety Valve"). The reason given by U.S. Probation was that as of the date of the PSI, "the government had not advised if the defendant has satisfied the criterion set forth in § 5C1.2(a)(5)." Upon reviewing the PSI, undersigned contacted AUSA Michele Vigilance and advised her of U.S. Probation's position on the Safety Value issue. Shortly after our conversation, AUSA Vigilance wrote U.S. Probation and advised them that the Defendant did meet the criterion set forth in § 5C1.2(a)(5). It is anticipated that U.S. Probation will amend the PSI to reflect that the Defendant does qualify for the Safety Valve and as such should receive the corresponding two - level reduction pursuant to § 2D1.1 (b)(18) to the Adjusted Offense Level. The revision to the PSI should also reflect that the Court can sentence the Defendant without regard to any statutory minimum sentence.

The Defendant objects to Paragraph 24 of the PSI with regard to the assertion that the adjusted offense level should be 36. Specifically, once the base offense level of 36 is reduced by three levels pursuant to U.S.S.G. §2D1.1(a)(5)(A) and B(ii); the two-level reduction for the "safety-valve" pursuant to U.S.S.G. §2D1.1(b)(18) is applied, and the Defendant receives a two-level decrease for his minor role in the criminal conduct pursuant to U.S.S.G. §3B1.2(b), the result is an adjusted offense level of 29, rather than 36.   Once a three-level reduction for acceptance of responsibility is applied pursuant to U.S.S.G. §3E1.1(a) and (b), the result is a total offense level of 26. With a total offense level of 26, and zero criminal history points, the recommended sentencing range would be 63 -78  months.

## MOTION FOR A DOWNWARD VARIANCE
## PURSUANT TO 18 U.S.C. § 3553

Assuming that this Court accepts the Defendant's calculations and determines that the appropriate Total Offense Level is 26, the recommended sentencing range is still severe and greater than necessary to achieve the purposes of sentencing. If the Court does not accept the defendant's calculations, the recommended sentencing range is draconian. As such, the Defendant asks the Court to grant a downward variance when sentencing him.

It is now well established that since *United States v. Booker*, 125 S. ct. 738 (2005), the sentencing guidelines are no longer mandatory. Instead now, a

sentencing court is to consider the advisory sentencing guidelines, as well as 18

U.S.C. § 3553, when sentencing a defendant

Title 18 U.S.C. § 3553 provides:

(a)Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to      provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

….

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Unfortunately, the offense has become rather common in the Southern District. Drug traffickers need to smuggle drugs. So they prey on the most vulnerable, least educated, and most desperate people and offer them what appears to be a significant amount of money to get them to travel on a go fast boat for days at a time and carry drugs for them. Most of the time people that get on these boats find themselves in desperate straits and the only way to survive is to take the chance

that they will not die during the trip, or that they will not get caught. The ones that come before the Court are the ones that did not die.

The Defendant recognizes that the offense is a serious offense simply because of the sheer weight of the cocaine. Having said that, the Defendant asks the Court to consider that is played a small part in this serious offense. He is but a crewmember on the go fast vessel that left Colombia and was traveling to the Dominican Republic.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Defendant, as the PSI shows, is uneducated, illiterate, and unsophisticated.

The Defendant is one of eight siblings. He describes his childhood as a "bad childhood". His parents separated when he was three years old, and he went to live with his father. At the age of seven he started working in the fields burning coal and doing construction work. At the age of ten, the defendant went to live with his mother, and at that time he began working with his mother packing coal in bags, in order to financially assist the family. Often times the Defendant had very little to eat. *See paragraphs 37 – 38 of the P.S.I.*

The Defendant only received a third grade education. He left school at the age of twelve. The reason his parents took him out of school was because the Defendant was mentally and physically bullied by his classmates because his parents could not afford to buy him a school uniform. As a result of being bullied the Defendant

experienced suicidal ideations, and stated that he planned on hanging himself. *See paragraph 44 of the P.S.I.* The Defendant can only read and write "a little" Spanish.

Prior to his arrest the Defendant worked as an assistant truck driver urning between $18.26 and $55.08 a month. *See paragraph 52 of the P.S.I* With that income he was attempting to maintain his girlfriend and their 11 month old child. The Defendant was told he would made 50, 000.00 Dominican pesos (roughly $946, U.S.), more than what he would made in a good year to risk his life and liberty by getting on the go fast boat with drugs. Even though he did not receive a penny prior to leaving his family, and wanting to provide for his family, he took the risk. Now he knows that he has to pay the price which includes going to prison.

The Defendant is not making excuses. He knows he did wrong, and he has accepted responsibility for his actions. The Defendant does want the Court to understand why he made the decision he made and have the context needed for the Court to understand.

### THE NEED FOR THE SENTENCED IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE AND TO PROMOTE RESPECT FOR THE LAW

The reason the Defendant did what he did, was to provide for the mother of his child and his child. The most important things in the Defendant's life are the mother of his child and his child. The Defendant's ability to provide for his family and to be with them, has been taken away from him. That is only the beginning of

the punishment the Defendant shall receive. He knows that he will receive a prison term. A term that will keep him away from what he values most. As a result the Defendant has already learned to respect the law. This is his first and last attempt to get on a go fast boat carrying drugs.

## TO AFFORD ADEQUATE DETERRENCE OF CRIMINAL CONDUCT

For the same reasons that the Defendant has learned respect for the law, he is deterred from breaking the law in the future. The Defendant will be taking advantage of the programs that will be available while in prison to better himself. He has expressed a desire to continue his education to become an automobile mechanic or an electrician. . *See paragraph 49 of the P.S.I.* He has learned that by improving himself he will not have to resort to breaking the law to provide for his family.

## TO PROTECT THE PUBLIC

Once the Defendant completes his prison term he will be deported. This is the first time the Defendant has any contact with the criminal justice system. Statistically he will not recidivate. Personally, he has learned respect for the law, and he does not want to be separated from his family again. There is no need to protect the public by giving the Defendant a lengthy prison term.

## TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT

The Defendant has a third grade education. He is illiterate. The Defendant has acknowledged that he would benefit from the educational programs B.O.P. can offer.

Clearly the Defendant seeks to improve himself, and wants to be the productive member of society that he was trying to be prior to being arrested. He wants to be a better person when he gets out of prison, than when he went in.

WHEREFORE the Defendant prays that this Honorable Court sustain his objections to the PSI and further, grant his motion for downward variance and sentence him to a term of imprisonment not to exceed 60 months.

Respectfully submitted,

**Body Richards Parker & Colonnelli, P.L.**
*(Counsel for Defendant Eric Manuel Suero Terrero)*
100 S.E. 2nd Street, Suite 2600
Miami, Florida 33131
Tel. : (786) 425-1045

By: /s/ Manuel L. Casabielle, Esq.
**Manuel L. Casabielle, Esq.**
Florida Bar No. 353213
mcasabielle@boydlawgroup.com
For Service of Pleadings
ServiceMia@boydlawgroup.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the EM/ECF Portal this 23rd day of August 2022.

By: */s/ Manuel Casabielle*
**Manuel L. Casabielle, Esq.**
Florida Bar Number 353213